2026 IL App (1st) 252100

SECOND DIVISION
July 14, 2026

No. 1-25-2100

| | |
|---|---|
| AMANDA L. LARSEN, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) |
| | ) Cook County |
| v. | ) |
| | ) |
| VISHAL VAID, | ) No. 2023 L 4794 |
| | ) |
| Defendant | ) |
| | ) |
| (Intergovernmental Risk Management Agency, | ) Honorable |
| | ) Maureen Hannon, |
| Intervenor-Appellant). | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice McBride concurred with the judgment and opinion.

**OPINION**

¶ 1      Intervenor-appellant Intergovernmental Risk Management Agency (IRMA) appeals the judgment of the trial court finding IRMA responsible for 100% of the costs and expenses plaintiff Amanda Larsen incurred in reaching a settlement agreement with defendant, Vishal Vaid. On appeal, IRMA contends that the trial court miscalculated its share of the costs and expenses pursuant to section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2024)), where the court found IRMA responsible for 100% of the costs and expenses but IRMA actually received only 75% of the total settlement after making its statutorily required payment of 25% of the settlement amount for attorney fees. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff was injured in an automobile accident with defendant on August 20, 2017, while working as a police officer. She filed a workers' compensation claim against her employer, the Village of Carol Stream Police Department. IRMA, the administrator of workers' compensation benefits for the employer, paid $399,930.16 to plaintiff.

¶ 4     Plaintiff also filed a civil action against defendant in 2018, and IRMA filed a petition to intervene. Plaintiff voluntarily dismissed the action and refiled her claim on May 9, 2023. Plaintiff included IRMA in a pretrial settlement conference with defendant. IRMA, however, refused to reduce its workers' compensation lien as part of the settlement agreement. On May 9, 2025, the trial court dismissed plaintiff's action pursuant to a settlement agreement between plaintiff and defendant. The total settlement amount of $325,000 comprised $250,000 from defendant's American Family Insurance policy and $75,000 from defendant personally.

¶ 5     On July 23, 2025, plaintiff filed a "Motion Relating to Pro Rata Costs." Therein, she stated that IRMA refused to accept anything less than 100% of the settlement as reimbursement. She further stated that IRMA did not dispute its statutory obligation to pay 25% of the attorney fees accrued in pursuing the settlement, nor did it dispute the amount of costs and expenses plaintiff incurred in the action. The parties, however, disagreed on the percentage of the costs and expenses IRMA should pay. Plaintiff argued that IRMA was responsible for 100% of the costs and expenses where it received 100% of the settlement amount. IRMA argued that it was only obligated to pay 75% of the costs. Plaintiff requested that the trial court order IRMA to pay plaintiff $20,794.88 for the costs of prosecuting the case.

¶ 6     In response, IRMA filed a "Petition to Adjudicate Workers' Compensation Lien." IRMA stated that it paid $399,930.16 in workers' compensation benefits to plaintiff and that plaintiff

settled her personal injury case for $325,000. IRMA did not dispute that, under section 5(b) of the Act, it must pay 25% of the settlement sum for plaintiff's attorney fees, or $81,250. IRMA also did not dispute the costs or expenses submitted by plaintiff totaling $20,794. Citing *Overlin v. Windmere Cove Partners, Inc.*, 325 Ill. App. 3d 75 (2001), IRMA alleged that the 25% attorney fee amount it owed to plaintiff should be subtracted from the total settlement before calculating its share of the costs and expenses. IRMA argued that, because it would only receive 75% of the total amount, its share of the costs should be 75% or $15,596.16. After deducting IRMA's share of the attorney fees and expenses, it should receive a net amount of $228,153.84 from the settlement.

¶ 7     Plaintiff filed a reply to IRMA's petition. She also filed a motion to amend her costs to $21,344.88. Plaintiff argued that a First District case, *Lewis v. Riverside Hospital*, 116 Ill. App. 3d 845 (1983), was controlling. She acknowledged that *Lewis* conflicted with *Overlin*, the case cited by IRMA. Plaintiff argued that the trial court was required to follow the First District case, as that was the appellate district in which the trial court presided. Plaintiff requested that the trial court find IRMA liable for 100% of the costs and expenses, or $21,344.88, as its *pro rata* share under the statute. She also requested that the trial court find IRMA's workers' compensation lien fully satisfied by its receipt of $222,405.12.

¶ 8     After a hearing, the trial court granted plaintiff's motion to amend her costs to $21,344.88. The court further found that IRMA must pay plaintiff $81,250 for attorney fees. Regarding the costs and expenses IRMA must pay, the court found that, because 100% of the settlement amount would go to IRMA as reimbursement for its lien, it must pay plaintiff's total costs of $21,344.88. After subtracting the attorney fees and costs from the settlement amount, IRMA was entitled to receive $222,405.12.

¶ 9     IRMA filed this appeal.

¶ 10                                    II. ANALYSIS

¶ 11      On appeal, IRMA contends that the trial court misapplied section 5(b) of the Act when it ordered IRMA to pay 100% of plaintiff's costs and expenses in obtaining the settlement with defendant. This issue requires us to interpret section 5(b). Our primary objective in interpreting statutes is to ascertain and give effect to the legislature's intent. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. The best indicator of legislative intent is the statute's plain language, given its plain and ordinary meaning. *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 20. Where the statutory language is clear and unambiguous, we will apply it as written without resort to extrinsic aids. *Policemen's Benevolent Labor Committee v. City of Sparta*, 2020 IL 125508, ¶ 15. We must construe words and phrases in light of other relevant provisions of the statute and not in isolation. *Mercado*, 2025 IL 129526, ¶ 20. Statutory interpretation is a question of law that we review *de novo*. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 16.

¶ 12      Relevant here, section 5(b) of the Act provides:

> "(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee *** and judgment is obtained and paid, or settlement is made with such other person, *** then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

Out of any reimbursement received by the employer pursuant to this Section the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." 820 ILCS 305/5(b) (West 2024).

¶ 13 It is well established that section 5(b) gives employers the statutory right to reimbursement for "the amount of compensation paid or to be paid" by the employer under the Act. (Internal quotation marks omitted.) *Freer v. Hysan Corp.*, 108 Ill. 2d 421, 426 (1985). The employer's lien plays an integral role in the workers' compensation scheme. *Gallagher v. Lenart*, 226 Ill. 2d 208, 238 (2007). Because the Act requires that the employer pay compensation to an injured employee, regardless of fault, section 5(b) allows "both the employer and the employee an opportunity to reach the true offender while preventing the employee from obtaining a double recovery." *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 112 (1985).

¶ 14 At the same time, section 5(b) requires that the employer pay its *pro rata* share of "all costs and reasonably necessary expenses" in connection with the employee's recovery against a negligent third party, where the employer will receive reimbursement for workers' compensation payments made to the employee. 820 ILCS 305/5(b) (West 2024). Section 5(b) also requires the employer to contribute to the employee's attorney fees. *Id.* These obligations are " 'premised on the assumption that an employer should share in the fees and costs associated with the employee's

lawsuit because the litigation benefits the employer by providing a fund from which the employer can obtain reimbursement of its workers' compensation payments.' " *In re Estate of Dierkes*, 191 Ill. 2d 326, 333 (2000) (quoting *Silva v. Electrical Systems, Inc.*, 183 Ill. 2d 356, 361 (1998)). Our supreme court has made clear that "[t]he attorney fees and costs provision of section 5(b) is an obligation imposed on the employer" alone. *Ramsey v. Morrison*, 175 Ill. 2d 218, 239-40 (1997).

¶ 15    IRMA agrees that it must pay its *pro rata* share of plaintiff's costs and expenses in obtaining the settlement pursuant to section 5(b). However, it construes the language of the second paragraph as providing that, *before* the trial court calculates the employer's share, it must first subtract the mandatory attorney fees the employer must pay, or "25% of the gross amount of such reimbursement." IRMA argues that the trial court erred in calculating its share of costs and expenses based on 100% of the gross reimbursement, rather than on 75% of that amount.

¶ 16    As support for its interpretation, IRMA points to the difference in how the word "reimbursement" is used in the second paragraph. On the subject of costs and expenses, the statute provides that the employer shall pay its *pro rata* share of costs and expenses "[o]ut of any reimbursement received by the employer." 820 ILCS 305/5(b) (West 2024). When referring to the obligation to pay for attorney fees, section 5(b) states that "the employer shall pay such attorney 25% of the *gross* amount of such reimbursement." (Emphasis added.) *Id.* IRMA argues that, because section 5(b) requires only the attorney fees to be calculated based on the gross amount of the reimbursement, the legislature intended the determination of the employer's share of costs and expenses to be based on the net reimbursement the employer will receive *after* subtracting the attorney fees it is obligated to pay.

¶ 17    We disagree with this interpretation. The second paragraph contains no language indicating an intent to connect the calculation of the employer's *pro rata* share of costs to the amount of attorney fees the employer must pay.

¶ 18    The second paragraph of 5(b) plainly states that

> "[o]ut of any reimbursement received by the employer pursuant to this Section the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim *** *and* where the services of an attorney at law of the employee *** have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, *then* *** the employer shall pay such attorney 25% of the gross amount of such reimbursement."

(Emphases added.) *Id.*

Under general principles of statutory construction, the term "and" is conjunctive, meaning the legislature intended for all of the listed requirements to be met, each operating as independent elements. *Byung Moo Soh v. Target Marketing Systems, Inc.*, 353 Ill. App. 3d 126, 131 (2004). Accordingly, the employer's share of costs and his contribution to attorney fees are two separate employer obligations. See *Zuber v. Illinois Power Co.*, 135 Ill. 2d 407, 411 (1990) (finding that, under section 5(b), the employer must pay an attorney fee of 25% of the gross amount of such reimbursement "[i]n addition" to his proportionate share of costs and expenses of the third-party suit).

¶ 19    *Zuber* provides further guidance on this issue. In *Zuber*, our supreme court considered whether the employer's *pro rata* share of costs may be assessed only against past workers' compensation benefits already paid or whether the employer must also pay his share of costs assessed against future benefits he is relieved from paying due to the third-party recovery. In doing

so, the court construed the phrase "reimbursement received by the employer" in the second paragraph. *Id.* at 415. To properly understand the meaning of that phrase, the court did not read the paragraph in isolation.

¶ 20 Our supreme court determined that, by reading the first and second paragraphs of section 5(b) together, it was clear that "the source of that reimbursement is found in the requirement of the first paragraph that from any third-party recovery the employee or his representative pay to the employer 'the amount of compensation paid or to be paid by him.' " *Id.* at 415-16. The court held that "the reimbursement in the second paragraph of section 5(b) is not limited to amounts accrued by the time of judgment or settlement, but rather includes as well the future compensation payments the employer is relieved from making by reason of the third-party recovery." *Id.* at 416. Accordingly, the court found it appropriate "to impose fees and costs in relation to both benefits, and clearly section 5(b) was intended to achieve that end." *Id.*

¶ 21 Relevant here, the court did not construe "reimbursement received" as related in any way to the net amount *actually received* by the employer after subtracting fees and costs. Instead, the supreme court determined that the phrase relates to the amount the employer *has a statutory right to receive* based on compensation he has already paid or will have to pay in the future. It follows that section 5(b) obligates the employer to pay his *pro rata* share of costs for the reimbursement of payments that he has paid or will have to pay under the Act.

¶ 22 Therefore, we find that the phrase "any reimbursement received by the employer" simply means any reimbursement for compensation paid or to be paid by the employer pursuant to the Act, without regard to the amount of attorney fees the employer must pay. In fact, *Zuber* supports our determination where, in that case, the employer's costs were calculated based on the total

reimbursement without subtracting the 25% attorney fee. *Id.* at 412-13; see *Lewis*, 116 Ill. App. 3d at 851-52 (same); *In re Estate of Glenn*, 319 Ill. App. 3d 625, 631-32 (2001) (same).

¶ 23    IRMA disagrees with this interpretation, citing *Overlin*, a Second District case, as support. We recognize that our decision conflicts with *Overlin*, where the Second District found that the legislature's use of "gross amount" of the reimbursement when referencing attorney fees meant that only the employer's obligation for fees must be based on the "gross amount." *Overlin*, 325 Ill. App. 3d at 77-78. Therefore, the court subtracted the amount of attorney fees from the total recovery and used the remainder to calculate the employer's *pro rata* share of costs. *Id.* at 78.

¶ 24    We find it significant, however, that *Overlin* did not explicitly consider the meaning of "any reimbursement" when calculating the employer's cost obligation, as did our supreme court in *Zuber*. We also note that the opinions of the Second District are not binding on this district. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). Although there is a First District case that affirmed the trial court's imposition of costs using "the rule enunciated in *Overlin*," the issue in that appeal was whether the employer had a duty to pay those costs when it had sold its lien prior to the plaintiff's settlement. See *Evans v. Doherty Construction, Inc.*, 382 Ill. App. 3d 115, 119-20 (2008). The appellate court did not consider whether the trial court's calculation of costs pursuant to *Overlin* was correct. In light of *Zuber*, we decline to follow the reasoning set forth in *Overlin*.

¶ 25    Moreover, *Overlin*'s interpretation is not supported by a plain reading of section 5(b). The employer's obligation to pay a *pro rata* share of costs is listed first. After setting forth the employer's obligation for costs, the provision addresses the employer's 25% attorney fee obligation. In using the phrase "gross amount" when referring to reimbursement for attorney fee purposes, the legislature clarified that the employer's 25% attorney fee obligation must also be

based on the total amount of reimbursement, without subtracting the costs and expenses first listed. Nothing in the language of section 5(b) authorizes a court to subtract the amount an employer owes for attorney fees before calculating his *pro rata* share of costs and expenses. When interpreting a statute, we may not depart from the plain language by reading into it exceptions, limitations, or conditions that conflict with clear legislative intent. *Palm v. Holocker*, 2018 IL 123152, ¶ 21.

¶ 26    In this case, IRMA paid $399,930.16 in workers' compensation benefits to plaintiff. Plaintiff subsequently filed an action against the tortfeasor and obtained a settlement in the amount of $325,000. Because the compensation paid by IRMA exceeded the settlement amount, IRMA was entitled to the entire recovery as reimbursement. *Dierkes*, 191 Ill. 2d at 332-33. Pursuant to section 5(b), IRMA's *pro rata* share of plaintiff's costs and expenses must be based on the reimbursement received. Because IRMA received the entire $325,000 as reimbursement, the trial court properly assessed IRMA with 100% of plaintiff's costs and reasonable expenses in reaching the settlement.

¶ 27                                   III. CONCLUSION

¶ 28    For the foregoing reasons, the trial court's judgment is affirmed.

¶ 29    Affirmed.

***Larsen v. Vaid*, 2026 IL App (1st) 252100**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023-L-4794; the Hon. Maureen Hannon, Judge, presiding. |
| **Attorneys for Appellant:** | Theodore J. Powers and Daniel W. Arkin, of Ancel Glink, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Daniel E. Murphy and Justin S. Stoner, of Murphy Stoner, of Chicago, for appellee. |